IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SENECA INSURANCE CO. a/s/o WILD BLUE MANAGEMENT LP, | ) ) | |
| Plaintiff, | ) ) | |
| vs | ) ) | Civil Action No. 13-1737 |
| MARK BEALE and MARKS MAINTENANCE AND REPAIR, | ) ) | Magistrate Judge Mitchell |
| Defendants, | ) ) | |
| vs | ) ) | |
| LARRY D. JEFFRIES, d/b/a L&D CONTRACTING, GENE NEWHAMS, d/b/a/ G.N. ELECTRICAL, CHRIS SOKOL, and WILD BLUE MANAGEMENT LP, | ) ) ) ) | |
| Third Party Defendants. | ) | |

MEMORANDUM AND ORDER

Presently before the Court is a motion for summary judgment pursuant to Federal Rule of

Civil Procedure 56, filed by the Defendants, Mark Beal[1] and Marks Maintenance and Repair

(ECF No. 69). For the reasons that follow, the motion will be denied.

Plaintiff, Seneca Insurance Company (Seneca), as subrogee of Wild Blue Management

LP (Wild Blue), brings this diversity action alleging that Defendants negligently performed

certain electrical work at an unoccupied space at the Natrona Heights Plaza Shopping Mall, such

that when other workers subsequently entered the property and turned the live breakers on, the

flow of electrical energy from the transformers caused an electrical fire resulting in millions of

dollars in property damages. Plaintiff seeks various forms of relief from Defendants for their

---

[1] Although the Complaint (and hence the caption of this case) and some of the documents in this case use the spelling "Beale," his own declaration (ECF No. 70 Ex. C) and various Bankruptcy Court filings cited herein indicate that the individual defendant's name is actually spelled "Beal." The Court will therefore utilize the spelling "Beal" except when quoting from a document that uses the spelling "Beale."

alleged negligence.

Defendants have impleaded three other contractors who performed work at the site as Third-Party Defendants, specifically: Larry D. Jeffries d/b/a L&D Contracting, Gene Newhams d/b/a G.N. Electrical, and Curtis Sokol. Defendants assert that Sokol was the general contractor on the demolition project, who had the sole responsibility to ensure that the electrical wires were capped and disconnected but negligently failed to do so; and that L&D Contracting and G.N. Electrical were negligent in failing to take proper precautions to determine what was connected to the live circuit breaker before energizing it. Defendants have also filed a Third-Party Complaint against Wild Blue, alleging that its negligence in failing to maintain the façade of the storefront, including not installing fire retainers or breakers in it, created an unreasonable risk of harm which was realized when the fire occurred.

Facts

On December 17, 2012, a massive electrical fire occurred at the Natrona Heights Plaza Shopping Mall causing millions of dollars of losses to Wild Blue, which was the owner of the Plaza. The Complaint filed by Seneca, as subrogee for Wild Blue, alleges that Defendants' negligence in failing to disconnect the electrical power from a neon sign on a façade to the building prior to removing it led to the fire.

At the time of the fire, Beal maintained commercial general liability insurance with Nationwide Mutual Insurance Co. (Nationwide). (Beal Decl. ¶ 2.)[2] The policy provided an aggregate limit of $1,000,000. (ECF No. 70 Ex. B at 6.) Specifically, the policy provided that:

> 1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
>
>     a. Insureds;

---

[2] Defs.' Concise Statement (ECF No. 70) Ex. C.

2

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **C.**;

b. Damages under Coverage **A.**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard; and

c. Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A.** for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard".
…

5. Subject to Paragraphs **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage **A.**; and

b. Medical expenses under Coverage **C.**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

(Id. at 19.)

At the time of the fire, Beal had no other applicable insurance. (Beal Decl. ¶ 3; Waltman

Aff. ¶ 15.[3])

On October 10, 2013, Seneca sent Nationwide a letter demanding that the $1 million

_____

[3] ECF No. 70 Ex. D. Plaintiff contends that discovery is ongoing and that it is premature to determine if Beal had any additional insurance through Nationwide. (DiFlorio Decl. ¶ 13, ECF No. 73 Ex. 1.) However, both Beal and Waltman (a Commercial Casualty Claims Manager for Nationwide) have testified that there was no other policy and discovery on liability was due to be completed in this case by June 30, 2015. In addition, it is noted that, in its October 10, 2013 letter to Nationwide, Seneca stated that: "After extensive discussions with you, we understand that Mr. Beale's only insurance coverage for this claim is the $1 million policy with Nationwide Insurance." (ECF No. 73 Ex. 5.)

3

policy limits of Nationwide's insurance policy issued to Mark Beal be paid to Seneca. Seneca's letter informed Nationwide formally that Seneca was "offering an opportunity to settle the subrogation claim against Mr. Beale [sic] for only 10% of the likely claim amount, and to protect Mr. Beale from having a judgment against him for many millions of dollars over his available insurance coverage." (Pl.'s Resp. Ex. 5.)[4]

Seneca placed Nationwide on formal notice that Seneca had been exposed to an estimated $10 million in losses resulting from the electrical fire that burned down the Plaza. More specifically, Seneca told Nationwide that it had already paid $6 million to its insured, Wild Blue, with another $4 million in payments reserved. (ECF No. 73 Ex. 5.)

On October 15, 2013, Nationwide acknowledged in a letter that Seneca was the first and sole claimant on its policy. However, Nationwide rejected Seneca's settlement demand and instead offered only $50,000.00 – the equivalent of one-half of one percent of Seneca's estimated $10 million exposure. (ECF No. 73 Ex 4.)

On December 5, 2013, Seneca filed this action, alleging negligence by Defendants. In 2014, seven other cases were filed against Defendants, Wild Blue, Sokol, L&D Contracting and G.N. Electrical in the Court of Common Pleas of Allegheny County, Pennsylvania, seeking an aggregate of $3.5 million in damages. (ECF No. 70 Ex. A; Waltman Aff. ¶ 9.) The cases were consolidated. (Schmidt Decl. ¶ 3.)[5]

On February 20, 2015, Nationwide tendered its $1 million policy on behalf of Mark Beal in exchange for a release of liability from all claims against Beal and Nationwide in both this case and the seven state court actions. (ECF No. 73 Ex. 8; Waltman Aff. ¶ 10.)

Seneca responded by letter dated March 6, 2015, reminding Nationwide that on October

---

[4] ECF No. 73.
[5] ECF No. 70 Ex. I.

10, 2013, Seneca had demanded $1 million to settle its subrogation claim with Beal, but "Seneca's demand was rejected just 5 days later when Mr. Beale's representatives offered a mere $50,000 with full knowledge that Seneca's damages were $10 million." (ECF No. 73 Ex. 3 at 1.) Seneca proceeded to explain that, as indicated in its correspondence to Nationwide, the $1 million policy limits demand expired when it was forced to file suit against Beal and the demand was now $10 million. Seneca explained further that its actual damages exceeded $11.3 million at this point, a figure inclusive of $11,144,138.69 in property damages (of which Seneca had already paid $9,673,668.20) and at least $240,199.37 in loss of business income.

On May 4, 2015, Beal filed a Voluntary Petition for Chapter 7 Bankruptcy.[6] On August 10, 2015, the Bankruptcy Court entered an order lifting the automatic stay to allow the state court actions to proceed. (ECF No. 70 Ex. E.) Seneca filed a Proof of Claim on October 8, 2015 in the bankruptcy totaling $11,384,338.06. (DiFlorio Decl. ¶ 12.)

On September 17, 2015, Nationwide reissued its offer of the limits of the $1 million policy to Seneca and the seven state court plaintiffs. (Waltman Aff. ¶ 13.) Seneca notes that Nationwide's offer of the $1 million to Seneca and the state court plaintiffs was not without condition. Rather, Nationwide insisted that any payment of portions of the policy had to also include a release of Nationwide. Seneca indicates that it would have agreed to share in the $1 million policy limits with the state court plaintiffs on a pro rata basis as long as bad faith claims against Nationwide were not included in the release. Seneca agreed to a dollar for dollar credit towards a bad faith verdict recovery. This proposal was rejected by Nationwide as the carrier insisted on a waiver of claims against Nationwide. See Nationwide's letter of October 19, 2015

---

[6] Beal contends that the bankruptcy was the result of the claims filed against him resulting from the fire. Seneca responds that Beal had many other liabilities which exceeded his assets. That dispute is not relevant to the issues in this case.

(ECF No. 73 Ex. 6.)

Defendants state that, on September 18, 2015, the Bankruptcy Court granted Beal a discharge of his debts, including all of the claims arising out of the fire. (ECF No. 70 Ex. F.) Seneca contends that Bankruptcy Court did not grant Beal a discharge of all of his debts, including all of the claims arising from the fire. Rather, the discharge only prevented parties from collecting their liability against personal assets of Beal that were exempt under the Bankruptcy Code. Seneca's rights were discharged against Beal's exempt personal assets, but the discharge order did not vitiate Seneca's rights to claims in the bankruptcy proceeding against estate assets and Seneca's rights to collect against available insurance proceeds from its federal litigation and Seneca's rights to pursue the bad faith claims Seneca purchased from the bankruptcy estate.

On September 23, 2015, Seneca rejected Nationwide's offer. (Waltman Aff. ¶ 13; ECF No. 73 Ex. 7.) However, the state court plaintiffs accepted the offer and executed releases in October and November, 2015. (Waltman Aff. ¶ 12; Schmidt Decl. ¶¶ 4-5; ECF No. 70 Ex. G.)

On December 3, 2015, Seneca purchased from the Bankruptcy Trustee of Mark Beal's bankruptcy estate all rights to several disputed claims, choses in action, causes of action, and remedies relating to the events which he has the right to pursue against one or more third parties, including Nationwide, and any other responsible party, for the failure of Beal's insurers or others to pay applicable policy limits to claimants and/or settle claims brought against Beal in connection with the Natrona Heights Plaza fire and any claims Beal had with respect to an excess judgment arising from his liability for the Natrona Heights Plaza fire, including but not limited to claims for statutory and common law bad faith, breach of contract and legal malpractice. (ECF No. 73 Ex. 9.) On December 11, 2015, the Bankruptcy Court issued an order lifting the

automatic stay with respect to this case. (ECF No. 70 Ex. H.) This order is discussed below.

Nationwide indicates that it has paid $1 million to the state court plaintiffs by depositing

the money into an escrow account. (Waltman Aff. ¶ 14; Schmidt Decl. ¶ 6.) On December 18,

2015, checks were issued from that account to distribute the $1 million in settlement proceeds.

(Schmidt Decl. ¶ 7.)

Procedural History

Plaintiff filed this complaint on December 5, 2013. Jurisdiction is based on diversity of

citizenship in that Plaintiff is a New York corporation with its principal place of business in New

York, New York; Beal is a Pennsylvania citizen; Marks Maintenance and Repair is a

Pennsylvania corporation with its principal place of business in Tarentum, Pennsylvania; and the

amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. (Compl.

¶¶ 1-5.) Count I (the only count) alleges that Defendants acted carelessly, negligently and

recklessly in their electrical work as described above. Plaintiff seeks "compensatory and

punitive damages together with interest, delay damages, costs, and such other relief as this Court

deems appropriate under the circumstances." (Compl. at 7.)

On June 30, 2014, Defendants filed a Third-Party Complaint against Sokol, L&D

Contracting and G.N. Electrical (ECF No. 24). On December 16, 2014, Defendants filed another

Third-Party Complaint, this one against Wild Blue, the owner of the property, alleging that it

acted negligently in failing to maintain the façade of the building (ECF No. 50).[7]

On June 15, 2015, a suggestion of bankruptcy was filed as to Defendant Mark Beal (ECF

No. 56) and therefore an order was entered statistically closing the case based on the automatic

bankruptcy stay (ECF No. 57). On December 16, 2015, a notice was entered of a bankruptcy

---

[7] This Third-Party Complaint was answered by Seneca as if it had been named in a counterclaim
(ECF No. 51).

order granting relief from the automatic stay (ECF No. 59)[8] and an order was entered lifting the stay in this Court (ECF No. 60).

On April 25, 2016, Defendants filed a motion for summary judgment (ECF No. 69). Plaintiff filed its response on May 23, 2016 (ECF Nos. 73-75) and Defendants filed a reply brief on June 9, 2016 (ECF No. 80).

Summary Judgment Standard of Review

As amended effective December 1, 2010, the Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County

---

[8] This order is discussed in detail below.

of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Defendants argue that, as cited above, Beal's insurance policy with Nationwide had a $1,000,000 limit but this limit was paid (to the various state court plaintiffs) in December 2015, so there are no proceeds for the Plaintiff to attach. Plaintiff responds that: Defendants cite no authority to support their argument; it has purchased Beal's rights to claims including bad faith against his insurer, Nationwide; the policy limits are irrelevant to the bad faith claim it has asserted against Nationwide; and Nationwide's conduct in handling Seneca's claims against Mark Beal created liability for bad faith and the present litigation is intended to establish Beal's liability in excess of the policy limits so that Seneca may pursue third parties, i.e., Nationwide, for recovery of the judgment. Defendants reply that Nationwide is not a party to this action and that Plaintiff has brought an action against Nationwide in another court, where the issue of Nationwide's bad faith in handling the claims arising out of the fire can be litigated. (ECF No. 78 Ex. B.)

As explained below, Defendants' argument based upon the Bankruptcy Court order is unavailing. Therefore, the Court need not address Plaintiff's alternative argument about Nationwide's bad faith conduct.

Determining State Law

"It is well established that a federal court exercising diversity jurisdiction must apply the substantive law of the appropriate state." Covington v. Continental Tire, Inc., 381 F.3d 216, 218 (3d Cir. 2004). As Pennsylvania is the forum state, Pennsylvania law governs the legal issues presented herein.

The Bankruptcy Court order which is the subject of dispute in the pending motion states as follows:

9

> AND NOW, for the reasons stated on the record at the December 10 hearing, it hereby ORDERED, ADJUDGED, and DECREED that:
>
> 1. The Motion for Relief from the Automatic Stay is **GRANTED** for the purpose of allowing the litigation pending in the United States District Court for the Western District of Pennsylvania (Civil Action No. 13-cv-01737-RCM) to proceed against the Debtor, provided that any recovery obtained therein is limited to the proceeds of any insurance the Debtor may have.

(ECF No. 70 Ex. H.) Defendants contend that the phrase "provided that any recovery obtained therein is limited to the proceeds of any insurance the Debtor may have" means that this Court is required to "look through" to Beal's insurance policy with Nationwide, observe that it had a $1 million limit and conclude that such limit was reached when Nationwide tendered the policy limit to the state court plaintiffs in December 2015. Therefore, they argue, this case cannot proceed.

However, as Plaintiff observes, Defendants cite no authority for this unusual proposition. They refer to two cases, but neither is on point. In Liberty Mutual Insurance Co. v. Pacific Indemnity Co., 557 F. Supp. 986 (W.D. Pa. 1983), after Theodore Koenig was injured in a pool accident and obtained a verdict against the manufacturer (Muskin) and the retailer (W.T. Grant), a suit was filed in this Court to determine which of three insurers (Liberty Mutual, Pacific Indemnity and American Home) had the responsibility for the defense and verdict in the state court action. Pacific Indemnity argued that it had reached its policy limits of $100,000 and the record was undisputed on this point, so the court granted its motion for summary judgment. Pacific Indemnity also argued that Liberty Mutual had the sole duty to defend W.T. Grant, but the court held that (absent certain policy language lacking in the case) an insurer's duty to defend is independent of the limitation of liability. Defendants have not explained how that case has any bearing on this situation. Nationwide (which is not a party to this action) is not moving for summary judgment on the ground that its policy limits have been reached. Similarly, National

Specialty Insurance Co. v. Advanced Cargo Transportation, Inc., 2015 WL 4557387, at *6 (M.D. Pa. July 28, 2015), cited by Defendants for its holding that National Specialty "cannot possibly be liable to provide indemnification of Advanced Cargo in the Custom Polymer action because National Specialty has already paid the Limit of Insurance of Liability Coverage for this particular 'accident,'" is not analogous to this case in any way.

Defendants' argument fails for several reasons. As an initial matter, in every case, there is a possibility that a defendant may be unable to satisfy a judgment entered against him, but this potentiality never results in summary judgment being entered in the defendant's favor. Indeed, execution of judgments usually occurs in a separate state court proceeding. Often, this Court is not even aware of whether a successful plaintiff was able to collect on a judgment.

Moreover, Defendants' argument appears to assume that Beal will be held liable for causing the fire which resulted in the losses at issue, even though Beal has denied liability and has impleaded four other parties and asserted that it was their negligence which contributed to – or actually caused – the fire. If Wild Blue and/or the three contractors are liable, they may be responsible for some or all of the damages. In other words, Beal's ability to satisfy a judgment may never be at issue.

Finally, Defendants' interpretation of the Bankruptcy Court's order is not logical, because the order was issued on December 11, 2015, after Nationwide had tendered the policy limits to the seven state court plaintiffs and thereby exhausted the policy. The Bankruptcy Court was likely well aware of this development, and the parties would certainly have brought the matter to the court's attention. It would also be an extraordinary directive for the Bankruptcy Court to advise this Court that it could proceed with this case … but only if Beal has any insurance proceeds left to pay a potential judgment (which he does not).

The Court concludes that the most natural reading of the Bankruptcy Court's order is that it was lifting the automatic stay so that this Court could proceed to determine the issue of Beal's liability for the fire, as well as the liability of the Third-Party Defendants. If Beal is ultimately found to be responsible for the damages, the Bankruptcy Court was merely indicating that he cannot be held responsible for more than $1 million in damages, because that is the limit of his insurance policy.

For these reasons, the motion for summary judgment submitted on behalf of defendants (ECF No. 69) will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SENECA INSURANCE CO. a/s/o WILD BLUE MANAGEMENT LP, )<br>)<br>Plaintiff, )<br>)<br>vs )<br>)<br>MARK BEALE and MARKS MAINTENANCE AND REPAIR, )<br>)<br>Defendants, )<br>)<br>vs )<br>)<br>LARRY D. JEFFRIES, d/b/a L&D CONTRACTING, GENE NEWHAMS, d/b/a/ G.N. ELECTRICAL, CHRIS SOKOL and WILD BLUE MANAGEMENT LP, )<br>)<br>)<br>Third Party Defendants. ) | Civil Action No. 13-1737 |

ORDER

AND NOW, this 22nd day of July, 2016,

IT IS HEREBY ORDERED that the motion for summary judgment filed by the

Defendants, Mark Beale and Marks Maintenance and Repair (ECF No. 69), is denied.

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge